THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD KOZLOWSKI, Defendant-Appellant.

Second District    No. 2—94—0632

Opinion filed March 22, 1996.

G. Joseph Weller, Paul Alexander Rogers, and Colleen M. Chang, all of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Jerome P. Genova, of Calumet City, for the People.

JUSTICE RATHJE delivered the opinion of the court:

Following a bench trial, defendant, Richard Kozlowski, was found guilty of the offense of unlawful possession of more than 30 but less than 500 grams of cannabis. Defendant was sentenced to a term of 24 months' probation. The sole issue raised on appeal is whether the trial court erred in denying defendant's motion to suppress evidence. The testimony pertinent to the above issue is summarized below.

Barbara Jane Karl testified that she and her husband, George Karl, were the managers of the Geneva Motel. Defendant rented a room by the week at the motel. The week ran Sunday through Saturday. There were no leases for the rooms. Prior to November 24, 1992, defendant had been staying at the motel for three weeks in room 27 and had paid his rent through Saturday, November 21, 1992. When defendant did not appear on Sunday or Monday, Mrs. Karl became concerned and began calling the local hospitals and even the county jail in an effort to locate the defendant to determine what his inten-

tions were regarding the room he had rented. However, by Tuesday, November 24, 1992, when the defendant still had not been seen or heard from, the Karls concluded that they needed to prepare the room to be rerented. George Karl packed up defendant's clothes and other personal possessions and placed them in a room used for storage.

Mrs. Karl testified further that, after defendant's possessions had been removed from room 27, she entered the room to clean it in preparation for renting it. After taking the bed apart, she discovered bags underneath the bed. She opened one of the bags and found what she described as a "weed type of thing." She also observed several individual plastic bags with the same type of material inside. She believed the substance was marijuana, based upon an exhibit she had seen at the Kane County Fair. She asked her husband to look at the bags, after which Mr. Karl locked the door to the room and contacted the Kane County sheriff's office.

Mrs. Karl further testified that she was in the motel office when, prior to the arrival of the authorities, the defendant returned to the motel and headed toward his room. Mrs. Karl dialed 911, requesting immediate assistance. Defendant appeared at the office, and Mrs. Karl engaged him in conversation hoping to keep him there until the police arrived. Prior to the arrival of the police, defendant paid his rent. According to Mrs. Karl, defendant asked if his things were still there. Mrs. Karl told him that they were, meaning that they were still on the motel grounds even though she assumed he was talking about room 27. When the Geneva police arrived, they also talked to defendant while waiting for the Kane County deputies to arrive. Eventually, two Kane County deputies arrived.

On cross-examination, Mrs. Karl testified that she believed that it was defendant's room that the police entered on November 24, 1992. On redirect examination, she testified that she did not tell the police that defendant had paid his rent prior to the police going to defendant's room. She reiterated that defendant's belongings were removed from the room because the Karls could not hold a room without being paid for it.

George Karl testified that, as of November 24, 1992, he considered defendant still to be a guest of the motel, just delinquent in his rent. He did remove defendant's property from the room; otherwise, the Karls would have been subject to criticism from the motel owners had they not attempted to make the room available for rerenting. According to Mr. Karl, the defendant was welcome to return "subject to availability." Mr. Karl further testified as follows:

> "Q. But that was still his room under the agreement that you had with him?

A. Theoretically if he had come in, as he did, and paid his rent and put the stuff back in the room, it would have been his, yes.

Q. Before the room was up that way, before the police—excuse me, before the police entered the room, did he pay up for his arrears?.

A. He did.

Q. And was that his room before the police arrived?

A. Yes, it would have been. He actually paid for another full week, which would have started Sunday and go through the following Saturday. And if this happened on Tuesday, he was well paid up."

On cross-examination, Mr. Karl testified that he did not tell the police that defendant had paid his rent prior to their arrival. Mr. Karl acknowledged that, after defendant's belongings were removed from room 27, the room could have been rented to someone else that day. He further acknowledged that, when the defendant arrived at the motel on November 24, 1992, Mr. Karl directed him to the office to keep him out of room 27 and to collect the rent. On redirect examination, Mr. Karl opined that when the police accompanied defendant to room 27, it was defendant's room.

Defendant testified that on November 24, 1992, when he arrived at the Geneva Motel, Mr. Karl told him not to go to his room. Defendant told him he was going to the office to "square things." While he was in the motel office talking to Mrs. Karl, two Geneva police officers arrived. There was some but not much conversation between the officers and the defendant. Defendant did not feel as though he was free to leave at that time. Approximately eight minutes later, two Kane County deputies arrived. Deputy Baloun asked if defendant had a room at the motel to which defendant responded that he was living there. When Deputy Baloun suggested that they go to defendant's room, defendant felt he had no choice but to agree.

On cross-examination, defendant testified that he was aware that he had not paid his rent past November 21, 1992, but he had a verbal agreement with Mrs. Karl as to his belongings. (The terms of that agreement were not explained.) He never said "okay" to Deputy Baloun's request to go to his room. Defendant never indicated to any of the officers that he wished to leave. Defendant never indicated to any of the officers that he wished to leave.

In denying defendant's motion to suppress, the trial court found that the defendant did not voluntarily consent to the search of the motel room. However, the trial court did conclude that once defendant's possessions were removed from the motel room he lost

any possessory interest in the room; that he did not gain the possessory interest back by paying the rent amount since that particular room could have been rented by someone else and/or defendant could have been given another room. In the trial court's opinion, only in the event defendant had moved his possessions back in the room prior to the search would he have gained his possessory interest back.

Following a bench trial, defendant was found guilty of possession of more than 30 but less than 500 grams of cannabis and was sentenced as indicated above. Defendant now brings this appeal.

■ In order to have standing to challenge a search, a defendant must demonstrate that his own fourth amendment rights have been violated. To do so, a defendant must demonstrate that he has a reasonable expectation of privacy in the place searched or the property seized. *People v. Walters*, 187 Ill. App. 3d 661, 666 (1989). In determining whether an individual has a reasonable expectation of privacy, a court may look at property ownership, possessory interest in the area or property seized, ability to control use of the property, prior use of the property seized or area searched, and whether defendant had a subjective expectation of privacy in the property. *Walters*, 187 Ill. App. 3d at 666.

■ In the present case, defendant contends that the trial court erred in determining that he had no expectation of privacy in room 27. This court has noted that the fourth amendment constraints against unreasonable searches and seizures apply to guests in hotel rooms. *People v. Vought*, 174 Ill. App. 3d 563, 567 (1988). However, *Vought* is distinguishable from the present case because, as the court pointed out in *Vought*, it was undisputed by the parties that Vought was a registered guest of the hotel at the time of the search. *Vought*, 174 Ill. App. 3d at 566-67. In the present case, there was conflicting testimony on that very issue.

Our review of the evidence in this case is guided by the following principles. As a general rule, the law provides that each case must be decided on it own facts, and a trial court's ruling on a motion to suppress will not be disturbed unless it was manifestly erroneous. *People v. Frazier*, 248 Ill. App. 3d 6, 12 (1993). This standard is clearly applicable where the motion turns upon findings of fact determined through an assessment of the weight and credibility of the evidence. *Frazier*, 248 Ill. App. 3d at 12. Because the trial court has heard the testimony, seen the witnesses, and had the opportunity to observe their demeanor, it is in the best position to judge the witnesses' credibility, determine the weight to be accorded their testimony, decide the inferences to be drawn from the evidence, and resolve any

conflicts in the evidence. *Frazier*, 248 Ill. App. 3d at 13. A reviewing court will not substitute its judgment on these matters for that of the trial court unless it finds the court's ruling to have been manifestly erroneous. 248 Ill. App. 3d at 13.

After reviewing the record in this case, we are of the opinion that the trial court erred in denying defendant's motion to suppress. The evidence does not support the trial court's determination that the defendant had lost his possessory interest in room 27 and thus did not have an expectation of privacy in room 27. On the contrary, the evidence clearly supports the conclusion that the defendant had an expectation of privacy in room 27.

We believe that the decision in this case rests upon the timing of the search by police relative to the payment of the rent for room 27. Preliminarily, we note that, despite the fact that defendant was behind in his rental payment, both Mr. and Mrs. Karl still considered defendant to be a guest of the motel on November 24, 1992. Although defendant's possessions were removed from room 27 and the room cleaned in preparation for rerenting, in fact, room 27 was not re-rented on November 24, 1992. Prior to the search by the police, defendant paid the rent due on room 27. Prior to the search by police, defendant was still in possession of the key for room 27. There is no evidence that he was asked to surrender that key prior to paying his rent or that he was offered another room in place of room 27.

The State argues that the search by the police should be upheld because the police were unaware that defendant had paid his rent prior to the search, relying on *People v. Smith*, 203 Ill. App. 3d 545 (1990). In that case, the court held that the decision of the police to enter a residence, based upon the circumstances before them and their reasonable belief that Smith had abandoned the premises, would have been lawful even if the trial court were later to find that belief to be erroneous. *Smith*, 203 Ill. App. 3d at 559.

We decline to follow *Smith*. *Smith* is factually distinguishable from the present case. Smith, who was two months behind in his rent, did not pay his arrearage prior to the search by the police.

Moreover, when it addressed an alternative argument by the State leading to the above pronouncement, the reviewing court had already determined that the trial court had correctly found that Smith had abandoned the premises. Such pronouncement is *dicta* and, therefore, not binding upon this court.

We further conclude that the State's reliance on *United States v. Parizo*, 514 F.2d 52 (2d Cir. 1975), is likewise misplaced. We note, first, that decisions of the United States District Court and the Court of Appeals are not binding authority upon state courts and are held

to be no more than persuasive authority. *People v. Qualls*, 233 Ill. App. 3d 394, 397-98 (1992). Moreover, *Parizo* is factually distinguishable from the case before us. In that case, Parizo had paid for one night's lodging at a motel. Although the next morning he made statements to two motel employees that he might stay longer, he never communicated that fact to the management. There was no evidence that he paid for any more than the first night. The search in that case took place after the defendant had been checked out of the motel by the management. *Parizo*, 514 F.2d at 53-54.

Based upon the record before us, we conclude that the decision of the trial court in determining that defendant had lost his expectation of privacy in room 27 was manifestly erroneous. Thus, the denial of the defendant's motion to suppress must be reversed.

The judgment of the circuit court is reversed, and the cause is remanded for a new trial

Reversed and remanded.

McLAREN, P.J., and GEIGER, J., concur.